**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Crawford,<br><br>    Plaintiff,<br><br>vs.<br><br>National Rifle Association of America,<br><br>    Defendant. | No. CV-23-00903-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendant National Rifle Association of America Political Victory Fund's ("Defendant") Motion to Dismiss for Failure to State a Claim (Doc. 16), Plaintiff Patricia Crawford's ("Plaintiff") Response (Doc. 19), and Defendant's Reply (Doc. 24). The Court rules as follows.[1]

**I. BACKGROUND**

Defendant is political action committee who generally campaigns for Second Amendment related rights. (Doc. 16 at 2). Plaintiff alleges that on November 6, 2022, Defendant sent a text message to her cell phone which included a "video file that was automatically downloaded to [Plaintiff's] phone and contained an artificial or prerecorded voice." (Doc. 1 at 5). The video in question allegedly is a recording of Kari Lake giving a message about the upcoming election. (Docs. 1 at 5, 19 at 1). Plaintiff alleges that a

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

narrator's voice can be audibly heard during the video. (Doc. 19 at 1). Plaintiff also alleges that she never gave Defendant consent to be contacted by telephone. (Doc. 1 at 5).

On May 23, 2023, Plaintiff filed the instant claim alleging that Defendant's conduct violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. 1 at 9). Specifically, Plaintiff alleges two counts against Defendant: "Count I" for leaving the message on her cell phone in violation of § 227(b)(1)(A)(iii) and "Count II" for leaving the message on her cell phone which serves as her residential phone in violation of § 227(b)(1)(B). (*Id.* at 9-11). Plaintiff argues that her privacy and right to solitude was disrupted by receiving the message from Defendant. (Doc. 19 at 3). Defendant has responded by arguing that the message itself does not qualify as actionable under the TCPA, and that its status as a tax-exempt political organization excuses it from liability. (Doc. 16 at 4, 11).

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Iqbal*, 556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

///

### III. **DISCUSSION**

Defendant argues that Plaintiff has failed to state a claim for two main reasons. First, that a text message cannot be considered a "prerecorded voice" under the TCPA, and second the TCPA exempts Defendant's conduct here. (Doc. 16 at 4, 11). Plaintiff responds by arguing the TCPA does cover the disputed text message in question, and that Defendant's assertions are affirmative defenses that are inappropriate for a motion to dismiss. (Doc. 19 at 3, 8). Plaintiff further argues that the Court should ignore the FCC's interpretation of the TCPA as it implicates several Constitutional concerns. (*Id.* at 11).

#### A. *Constitutional Concerns*

As an initial matter, the Court will address Plaintiff's argument regarding the FCC's interpretation of the TCPA, as the decision of whether to rely on that interpretation will partially influence the Courts analysis for the remainder of this Motion. Specifically, Plaintiff argues that the Court should not defer to the FCC's interpretation of the TCPA because (1) the Major Questions Doctrine applies (Doc. 19 at 12), and (2) the First Amendment bars such an interpretation of the TCPA (*Id.* at 15).

##### 1. Major Questions Doctrine

Plaintiff argues that the "economic and political significance of the TCPA" implicates the Major Questions Doctrine, and thus this Court should disregard the FCC's interpretation of the statute. (Doc. 19 at 12). Specifically, Plaintiff points to the economic impact of class action suits under the TCPA and their encroachment on state authority. (*Id.* at 12-13).

The current baseline for evaluating an agency's interpretation of the statute which it administers comes *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Accordingly, *Chevron* deference calls for two steps:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, [ ] as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, [ ] the court determines Congress has not directly addressed the precise

3

> question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842–43.

A major exception to *Chevron* deference has arisen in the years since, known as the Major Questions Doctrine. Under that doctrine, the Supreme Court has rejected various agency interpretations when they "assert[] highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) (specifically rejecting "'expansive construction of the statute' [when] 'Congress could not have intended to delegate' such a sweeping and consequential authority 'in so cryptic a fashion.'" (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)). The analysis of what constitutes a "major question" under the doctrine is determined on a case-by-case basis, but all examples in which the Supreme Court has found it to apply have involved some form of unheralded regulatory power by an agency. *See, e.g.*, *Food & Drug Admin.*, 529 U.S. at 123 (denying the FDA the authority to completely ban tobacco cigarettes); *Alabama Assn. of Realtors v. Department of Health and Human Servs.*, 141 S.Ct. 2485, 2487 (2021) (denying the CDC's authority to impose nationwide moratorium on evictions); *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014) (denying the EPA's interpretation which would have given it authority over "a significant portion of the American economy" including millions of small sources of pollutants, such as hotels and office buildings, that had never before been subject to such requirements).

In the present case, the Court finds that there are two reasons why the Major Questions Doctrine should not apply here. First, the plain language of the statute demonstrates that Congress did intend to give the FCC the power to carve out exceptions to the TCPA. 47 U.S.C. § 227(1)(B) (prohibiting robocalls unless they are "exempted by rule or order by the Commission."); § 227(2) ("The Commission shall prescribe regulations

4

to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission . . . (B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe . . . ."). Further, the Supreme Court has noted the FCC's authority to do exactly this. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 at n.1 (2020) ("Congress has also authorized the FCC to promulgate regulatory exceptions to the robocall restriction. *See* § 227(b)(2)(C)."). Thus, regardless of how potentially sweeping the agency's authority might be, it is valid if Congress so intended for it to exist. This can clearly be seen in other areas of administrative law. For example, Congress has delegated to the Federal Aviation Administration ("FAA") the ability to set standards for aircraft safety regulations. *See* 49 U.S.C. § 106. This is broad grant of authority as it gives the FAA the power to regulate every flight within the United States. Nevertheless, it is a valid grant of authority since Congress intended the FAA to possess such power. Similarly, Congress intended the FCC to possess such authority here.

Second, the Court finds that the FCC's ability to carve out exceptions to the TCPA is not the type of unheralded agency power that implicates the Major Questions Doctrine. Plaintiff's arguments about the high dollar judgments of class action suits under the TCPA are immaterial to the potential value judgment of his suit, which is not enough by itself to implicate the doctrine. Additionally, the value of the judgments in the cases cited by Plaintiff did not turn on the question of whether texts with attached videos qualifies for relief under the TCPA. *E.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1756, 215 L. Ed. 2d 653 (2023) (upholding a judgment under the TCPA unrelated to the interpretation of § 227(b)(1)). Furthermore, unlike the agency actions which have implicated the Major Questions Doctrine, the FCC's interpretation of § 227(b)(1) does not directly regulate the everyday lives of Americans. Instead, it only changes whether a claim may proceed under the TCPA. There is another option, other than filing a lawsuit, that many Americans will choose when faced with these types of messages. They will ignore them. Plaintiff's analogy to state nuisance law seems to suggest just that.

5

(Doc. 19 at 14). In sum, the Court declines to apply the Major Questions Doctrine here, and thus *Chevron* deference to § 227(b)(1) controls.

### 2. The First Amendment

Plaintiff argues that the exceptions to the TCPA from 47 C.F.R. § 64.1200(a)(3), are unconstitutional content-based restrictions on speech. (Doc. 19 at 15). Specifically, Plaintiffs points to provisions regulating calls "not made for a commercial purpose" or "on behalf of a tax-exempt organization." (*Id*.at 16). Defendant counters that under the Hobbs Act, 28 U.S.C. § 2342, this Court lacks Jurisdiction to Consider the Constitutionality of the FCC's regulations. (Doc. 24 at 13). As the Hobbs Act presents a jurisdictional question, the Court will address it first. *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002).

Under the Hobbs Act, the courts of appeals have exclusive jurisdiction to determine the validity of the FCC's orders. *See* 28 U.S.C. § 2342(1); *see also US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000); *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396–97 (9th Cir. 1996). "Orders" include regulations. *See Cubbage v. Talbots, Inc.*, 2010 WL 2710628, at *4 (W.D. Wash. July 7, 2010); *see also Gottlieb v. Carnival Corp.*, 635 F.Supp.2d 213, 220–21 (E.D.N.Y. 2009) (discussing *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 416, 62 S. Ct. 1194 (1942)). This is because "agency orders are 'final orders' for the purposes of the Hobbs Act 'if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *US W. Commc'ns, Inc.*, 224 F.3d at 1054 (quoting *Sierra Club v. United States Nuclear Regulatory Commission*, 862 F.2d 222, 225 (9th Cir.1988)). "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

Here, the FCC's action to exempt certain calls under the TCPA was clearly "final"

for the purposes of the Hobbs Act as the agency codified these exemptions in the Code of Federal Regulations. *See* 47 C.F.R. § 64.1200(a)(3). These exemptions also clearly deny a legal right to potential plaintiffs under the TCPA by excusing potential defendants from liability. This is the exact criteria outlined by the Supreme Court in *Bennet* for the action to be considered "final." 520 U.S. at 177–78. Therefore, 47 C.F.R. § 64.1200(a)(3) was a final order for the purposes of the Hobbs Act, and this Court lacks jurisdiction to review the constitutionality of it. *See* 28 U.S.C. § 2342(1).

B. *Whether the message is a prerecorded voice under the TCPA*

Having ruled on Plaintiff's Constitutional concerns, the Court turns to whether Plaintiff has stated a claim for relief under the TCPA. Defendant's first argument is that the message in question here is not a "prerecorded voice" under the TCPA, and therefore liability cannot attach for sending it. (Doc. 16 at 4). Plaintiff counters by arguing that the attached video includes an audible voice, and thus is actionable. (Doc. 19 at 3).

The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any . . . artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The Ninth Circuit has interpreted a "prerecorded voice" to require audible sounds. *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023) (affirming dismissal for a text message that did not include an audible component) ("We hold that Congress clearly intended 'voice' in 47 U.S.C. § 227(b)(1)(A) to encompass only audible sounds"). The Ninth Circuit has also previously distinguished between text messages and voice calls for the purposes of the TCPA. *Id.* at 1163; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009). "Likewise, the FCC has distinguished between 'voice calls' and 'text calls,' [citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003)], and 'voice calls' and 'text messages,' [citing 47 C.F.R. § 64.1200]." *Trim*, 76 F.4th at 1163. Thus, in the Ninth Circuit, text messages are potentially actionable under the TCPA, but must include an audible component. *Id.*

In the present case, Plaintiff alleges that Defendant sent her a MMS text which included a video with a prerecorded audible component. (Doc. 1 at 5). However, Plaintiff does not allege that the video immediately started playing with audio, or that a separate audio track began reading the text of the message aloud. (*See id*. at 4-6, 9-11). Plaintiff has alleged that the video automatically downloaded to her phone but does not allege that it automatically began playing. (*Id*. at 5). Thus, the Court finds that the message provided a conscious choice of whether to engage with the audible component, but that this is different from what the TCPA intended by "make a call" using an "prerecorded voice." § 227(b)(1)(A)(iii). Congress' concern for intrusive telemarketing does not give this Court permission to define the TCPA so broadly as to find potential liability for every single video sent via text message. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 (2021) (holding that privacy interests alone were insufficient to justify a broad reading of the auto-dialer section of the TCPA); *see also ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 698 (D.C. Cir. 2018) ("It cannot be the case that every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact."). As a result, the Court cannot find that this message had an audible component which was thrust upon the recipient, as required by the Ninth Circuit. *Trim*, 76 F.4th at 1163.

To address this deficiency, Plaintiff has analogized the attached video to a voicemail in which an audible message is left on a telephone for the recipient to play later. (Doc. 19 at 3). Plaintiff also points out that other courts have found that the TCPA regulates unwanted voicemails. (*Id*.); *see also Snyder v. Landcar Mgmt. LTD*, 2023 WL 2614960, at 3* (D. Ariz. Mar. 23, 2023). The problem with this analogy though, is that voicemails are the result of voice calls, not text messages. As stated previously, both the Ninth Circuit and the FCC distinguish between the two. *Trim*, 76 F.4th at 1163; 47 C.F.R. § 64.1200. The Court therefore finds this analogy deficient as the difference between text messages and voicemails dictates whether the recipient is required to engage with the audible component or not. *See DeMesa v. Treasure Island, LLC*, No. 218CV02007JADNJK, 2022 WL

1813858, at *3 (D. Nev. June 1, 2022) (holding that "text messages don't have voices; no court has held that they do; and although the Ninth Circuit has included texts in the definition of the term 'calls,' it has continued to distinguish between 'text calls' and 'voice calls.'"). Accordingly, Plaintiff has failed to state a claim under "Count I" under § 227(b)(1)(A)(iii) and "Count II" under § 227(b)(1)(B).

C. *Whether Defendant is exempt from the requirements of the TCPA*

Defendant also argues that regardless of whether the disputed message is actionable under the TCPA, it is exempt from enforcement as stated under 47 C.F.R. § 64.1200(a)(3). (Doc. 16 at 9, 11). Plaintiff argues that whether Defendant is a tax-exempt organization for the purposes of the regulation is a question of fact inappropriate for a motion to dismiss. (Doc. 19 at 8).

In addition to prohibiting calls to cell phones using prerecorded voices, the TCPA also bans calls to residential lines for the same. 26 U.S.C. § 227(b)(1)(B). The TCPA also gives the FCC the authority to carve out exceptions to those calls, which are listed in 47 C.F.R. § 64.1200(a)(3). *Id*. One of those exceptions is if the call is "made by or on behalf of a tax-exempt nonprofit organization and the caller makes no more than three calls within any consecutive 30-day period." 47 C.F.R. § 64.1200(a)(3)(iv).

In the present case, the Court finds that the TCPA is unambiguous in its command to the follow the exceptions promulgated by the FCC regulations, and therefore this Court is bound to follow them. 26 U.S.C. § 227(b)(1)(B) ("unless the call . . . is exempted by rule or order by the Commission under paragraph (2)(B)"); s*ee also Chevron*, 467 U.S. at 842–43 (requiring courts to follow the statute if unambiguous). Here, Defendant is a political organization that is tax-exempt. *See* 26 U.S.C. § 527(a) ("A political organization shall be considered an organization exempt from income taxes *for the purpose of any law* which refers to organizations exempt from income taxes."). Plaintiff has described Defendant as "purport[ing] to be a Political Action Committee," but argues that Defendant's status as a tax-exempt organization is a question of fact. (Docs. 1 at 2, 19 at 9). This argument ignores the plain statement of the law here. 26 U.S.C. § 527(a) commands that this Court consider

political organizations tax-exempt "for any law." As 47 C.F.R. § 64.1200(a)(3)(iv) is directly referenced by the TCPA, the Court is bound to apply 26 U.S.C. § 527's definition to the regulations here. With this as a backdrop, 47 C.F.R. § 64.1200(a)(3)(iv) excuses tax-exempt organizations who make no more than three calls within a 30-day period. Plaintiff only alleges that Defendant sent him one message. (Doc. 1 at 5). Therefore, Defendant is exempt here. Accordingly, Plaintiff has failed to state a claim under "Count II" under 26 U.S.C. § 227(b)(1)(B) for calls to residential lines.

## IV.    CONCLUSION

In sum, Plaintiff has failed to state a claim against Defendant, both in "Count I" under § 227(b)(1)(A)(iii) and "Count II" under § 227(b)(1)(B) of the TCPA. Plaintiff's claims are dismissed with prejudice as well, as Plaintiff cannot possibly cure the deficiencies of those claims by the allegation of other facts. Leave to amend is therefore inappropriate. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

Accordingly,

**IT IS ORDERED** that Defendant National Rifle Association of America Political Victory Fund's Motion to Dismiss (Doc. 16) is granted and Plaintiff's claims are **dismissed with prejudice and without leave to amend**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** this action **enter final judgment accordingly**.

Dated this 3rd day of November, 2023.

> Honorable Steven P. Logan
> United States District Judge